Adams et al. *v.* Executors of Rolston.

---

JOHN ADAMS, JOHN KNOX, AND JAMES NIXON *against* THE EXECUTORS OF JOHN ROLSTON, Deceased.

In an action of assumpsit for goods sold, this court will not make an order on the plaintiffs to produce their books and papers relative to the issue previous to the trial, to be left with the defendant's attorney for his inspection.

This was an action on the case, which had been brought by the plaintiffs, who were merchants residing in Philadelphia, against the defendants, for goods and merchandise sold. It had been noticed for trial at the ensuing Morris Circuit, and now *Vanarsdale* " moved that all the proceedings in the cause might be stayed until the plaintiffs produce, upon affidavit, to the defendants, or their attorney, before the trial of this cause, at such time as the court may direct, all the books and papers in their possession concerning the matters in issue in the above cause ; and that the said books and papers be left with the defendants, or their attorney, or at such convenient place, and for such space of time as the court may direct, with liberty to inspect and peruse the same, and take copies, extracts or abstracts thereof ;" and read a copy of a notice of this motion, which had been served on the plaintiffs' attorney. In support of this motion he said, it was the practice of courts, whenever required, to give the parties the benefit of papers in the other party's custody. In N. York, on a similar application, the court ordered the production of papers and written correspondence relative to the matters in issue. 11 *John.* 245, *note, Lawrence* v. *The Ocean Ins. Co.* Courts of law

would not send the party into equity to get a sight of papers when they could give him the benefit of them by rule. The courts of the United States have this power, and it was given to them to prevent the necessity of instituting suits in equity merely to obtain from an adverse party the production of deeds and papers relative to the litigated issue. 2 *Dal. Rep.* 332. Courts of law had become more liberal in their practice than formerly, and now frequently granted relief where it was formerly necessary to resort to a court of Chancery. Thus anciently, by a rigid adherence to the rule requiring a profert, a person, in order to recover upon a lost bond, was driven into a court of equity; but now, upon suggesting the loss of the bond in the declaration, he may proceed at law. This practice of requiring a party to produce papers relative to the matters in issue, was well settled in England. 1 *Taunt Rep.* 167; 2 *Strange* 1139; 1 *Camp. Rep.* 562; 1 *Phil. Evi.* 337. And there was no good reason why it should not be adopted in this court; this case afforded a fair opportunity of introducing it here. The plaintiffs were merchants, and the defendants executors, ignorant of the transactions of their testator, and unless they can have a sight of the plaintiffs' books, they cannot go to trial upon fair and equal terms.

*Hornblower* and the attorney-general contra. This is a very extravagant and unprecedented application. It goes beyond anything the cases will warrant. It requires that the plaintiffs, who are merchants in Philadelphia, and who are prosecuting here on a simple account for goods sold, should send all the books of their extensive concern into this state, and that they should be left where the defendants' counsel can inspect them from day to day. What would be the condition of these plaintiffs if the court allow this rule? They might almost as well shut up their store as to attempt to carry on business without their books, or to be obliged to lay them open to the inspection of every

defendant whom they shall be compelled to prosecute for the collection of their debts. What merchant will deal with the citizens of New Jersey in the common course of commercial transactions if he cannot recover his debt without subjecting himself to a rule of this kind.

The case cited from *Phillip's Evi.* 337, also reported in *Str.* 1139, *Gaoler* v. *Nunnely*, is by no means analagous. That was between a factor and his employer, a grazier, not an action between merchant and merchant, debtor and creditor, but between agent and principal. But what was the order in that case? was it similar to the one here applied for? No! it was an order *that the plaintiff shew cause why he should not produce at the trial the several books* in which he entered the amount of beasts sold, and of money received, on the defendant's account, and, no cause being shewn, the rule was made absolute.

But this rule is not necessary here, to make us produce the books as evidence, because they can give us notice to produce them at the trial, and if we do not, they can prove them by the clerks who kept them, or in any other manner. A court of equity would not, upon a bill filed for a discovery, compel a merchant to produce all his books of account, without some special equity or specific ground stated in the bill. The rule in equity was, that if a plaintiff has set forth a title in contradiction to the defendant's, he has no right, generally speaking, to look into the defendant's title, but only if the same deed constitutes in part the defence, and in part the plaintiff's title. 13 *Vez.* 251; 1 *Mad. Chancery Practice* 165. The case cited from *Dallas* is founded on the special act of congress, and, therefore, does not apply to this court. The case from 11 *John.* 245, is a case on a policy of insurance. So, also, is the case from 1 *Camp.* 562. It may be proper, in cases on policies of insurance, and on documents in which both parties have an interest, but not in a case of this kind, which is an adversary suit. If the rule is granted, we cannot limit it as to the place of residence of the

party. If he should reside in Maine or Georgia, and should be obliged to bring an action in this state, he might be compelled to produce his books. How would a merchant of England ever recover a debt in this country, if applications of this kind are to prevail? Applications would be continually made for these rules, for the mere purpose of delay.

The practice act gives the defendant all the right he is entitled to; he had availed himself of it; had required a bill of particulars, which had been furnished him; and this was all he had a right to demand.

*Vanarsdale,* in reply. It is said, that in a court of equity we would not be entitled to a discovery to the extent we ask here. I know of no limit in equity within which a party could protect himself from disclosing matters of contract. The apprehensions of the gentlemen about laying open their books and exposing the concerns of the plaintiffs to the inspection of the defendants, are altogether groundless; they can seal up every other part of the books, except those which the rule calls for, and this is the ordinary method on these occasions.

Why should not the defendants be permitted to examine these books before, as well as at the trial? The accounts are of long standing; the executors are ignorant of them; it is impossible for them to investigate them thoroughly, in the hurry of trial. Courts of law are in the daily practice of relieving parties from the necessity of applying to a court of equity, and this case appears to me peculiarly proper for the exercise of that relief here. It is said, that the cases cited are insurance cases; but in these cases the principle was decided, that the court would make an order on the plaintiff to produce, upon oath, all papers in his possession concerning the cause at issue. And if no authority can be found to sanction it, yet if the rule is a beneficial one, and tends to further the ends of justice, it ought to be adopted.

KIRKPATRICK, C. J. It is not alleged that any such rule has ever been granted in this court.

FORD, J. A rule for the production of corporation books might be found on the minutes of this court.

*Curia advisare vult.* The court, after taking time to deliberate upon it, refused the motion.